IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | 3:10-cr-00005-BR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| GERALD DUANE RANDLE, | |
| Defendant. | |

**BILLY J. WILLIAMS**
United States Attorney
**LEAH K. BOLSTAD**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1000

      Attorneys for Plaintiff

**LISA C. HAY**
Federal Public Defender
**THOMAS EUGENE PRICE**
Assistant Federal Public Defender
101 S.W. Main Street
Suite 1700
Portland, OR 97201
(503) 326-2123

      Attorneys for Defendant

1 - OPINION AND ORDER

BROWN, Senior Judge.

This matter comes before the Court on Defendant Gerald Duane Randle's Motion (#72-1) to Reconsider Sentence or in the Alternative Reopen Sentencing Hearing and Motion (#72-2) for Discovery. For the reasons that follow, the Court **DENIES** Defendant's Motions.

## BACKGROUND

Following Defendant's guilty pleas to the crime of Felon in Possession of a Firearm, Senior Judge Garr M. King sentenced Defendant on February 6, 2012, to a term of 68-months imprisonment to be followed by a three-year term of supervised release. Defendant began his first term of supervised release on January 7, 2016.

On May 11, 2016, this Court revoked Defendant's supervised release and sentenced Defendant to a term of 10-months imprisonment to be followed by 26 months of reimposed supervision. Defendant began his second term of reimposed supervised release on November 29, 2016.

On November 21, 2017, the Court held a hearing to determine whether Defendant violated the terms of his supervised release.

On November 28, 2017, the Court entered an Order in which it noted Defendant admitted at the November 21, 2017, hearing that he violated the terms of his supervised release, and the Court

continued Defendant's supervised release with additional conditions including, among other things, that Defendant have "no contact with . . . Porter."[1]

On December 15, 2017, the Court issued a Warrant of Arrest and Order to Show Cause why Defendant's term of supervised release should not be revoked based on his probation officer's allegations that Defendant violated the conditions of release when he failed to follow a curfew or home-detention schedule and failed to participate in a mental-health treatment program.

On January 3, 2018, the Court issued an Amended Warrant of Arrest and Order to Show Cause why Defendant's term of supervised release should not be revoked based on his probation officer's allegations that Defendant violated the conditions of his release when he failed to follow a curfew or home-detention schedule and failed to answer truthfully all inquiries by the probation officer.

On January 8, 2018, the Court issued another Amended Warrant of Arrest and Order to Show Cause why Defendant's term of supervised release should not be revoked based on his probation officer's allegations that Defendant also violated the conditions of release when he had contact with Porter. Specifically, the Amended Warrant noted telephone records from the Multnomah County

---

[1] Porter's first name was redacted in the hearing transcript and is redacted in this Opinion and Order.

Jail indicate Defendant called Porter "138 times between December 19, 2017, and January 5, 2018. Of those calls, 35 were completed."

On January 10, 2018, the Court held a hearing to determine whether Defendant violated the conditions of supervised release as alleged. Defendant appeared at the hearing with counsel. At the hearing Defendant admitted he failed to follow a curfew or home-detention schedule and failed to participate in a mental-health treatment program. Defendant, however, disputed the allegation that he violated his no-contact condition.

At the hearing Probation Officer Brian Ring testified he spoke with Defendant shortly after the Court issued its November 28, 2017, Order and reminded Defendant that he "was to have no contact with . . . Porter or go[] to her apartment complex without advanced prior approval from the probation office." Hearing Tr. at 8. Officer Ring detailed in his testimony various ways that Defendant violated his supervised release by failing to follow his curfew or home-detention schedule on at least two occasions, failing to attend his mental-health treatment program, telephoning Porter 138 times, and having telephone conversations with her 35 times. Officer Ring also testified he listened to recordings of several of the telephone conversations, and the conversations did not contain any discussion of childcare.[2]

---

[2] Defendant and Porter are parents of two children.

During the hearing Thomas Price, defense counsel, asked Officer Ring "just to confirm . . . that there's no evidence that [Defendant] ever had any face-to-face personal contact with Ms. Porter." Tr. at 21. Assistant United States Attorney Leah Bolstad objected on the grounds of "some privacy and confidentiality and safety issues." Tr. 21. The Court overruled the objection, and Price subsequently rephrased the question in an effort "to confirm . . . [whether Officer Ring] ha[d] any indication that [Defendant] had any face-to-face contact with Ms. Porter." Tr. 22. Before Officer Ring answered, the Court asked the government "to confirm that the allegation [forming the basis of the supervised-release violation] does not rest on any face-to-face contact. Is that right?" AUSA Bolstad stated: "The violation alleged is no contact. The facts supporting that allegation are purely phone-related." Tr. 22. The Court noted Defendant, therefore, would only "be sanctioned for [telephone contact] in the event the Court finds a violation"; concluded Price's question was beyond the scope of the issue; and directed counsel to move on. After Defendant offered a statement on his violations, the Court adopted the government's recommended 24-month revocation term explaining:

> [Defendant,] [y]ou're manipulating these processes
> in a way that really concerns me. You are not
> being truthful, and this is only getting worse.
> Every time you're given an opportunity to set the

5 - OPINION AND ORDER

> path again after revocation and after sanction, you get in deeper. This is a real problem. I can't trust you. That's where we start. So I don't want to hear any more about the no-contact
>
> allegation and you're trying to dance around that. You violated it and you violated it repeatedly.
>
> * * *
>
> You have been revoked and sent to prison on supervision. You have been found in violation after that, and now we have three more violations. Your lawyer is doing the best he can to minimize the seriousness of those, but I'm very concerned about this building pattern here. You're blaming everyone and not taking any responsibility. You're speaking in passive voice. You have not been given this chance; you have not been given that chance. That is all ridiculous. In this setting, you have been given repeated opportunities, and you're the one who is failing. You are making choices that take – take and give the supervised release conditions the lowest priority. You do what you want to do.
>
> * * *
>
> I am accepting the recommendation of a 24-month revocation term because I believe that is what is required here.

Tr. 36-39.

On January 17, 2018, Defendant filed a Motion to Reconsider Sentence or in the Alternative Reopen Sentencing Hearing and Motion for Discovery in which Defendant requests the Court to reconsider his sentence and seeks discovery about the Court's meeting with Probation Officer Ring before the sentencing hearing specifically related to whether the Court received any information from Officer Ring that Defendant had face-to-face

6 - OPINION AND ORDER

contact with Porter in violation of his supervised release.

On January 19, 2018, the Court entered a Judgment for Revocation of Supervised Release.

On January 24, 2018, Defendant filed an Appeal regarding the January 19, 2018, Judgment of Revocation.

On January 31, 2018, the government filed a Response to Defendant's Motion to Reconsider Sentence or in the Alternative Reopen Sentencing Hearing and Motion for Discovery.

On February 6, 2018, the Court entered an Order in which it questioned whether it continued to have jurisdiction to decide Defendant's Motion to Reconsider in light of the pending appeal. The Court directed Defendant to file a memorandum in further support of his Motion to Reconsider "specifying the jurisdictional basis thereof in light of Defendant's pending appeal and stating more concisely than argued in his Motion the particular clear error" the Court allegedly made and to include citations to case authority and the record.

On February 26, 2018, Defendant filed a supplemental memorandum in further support of his Motion to Reconsider.

On March 13, 2018, the government filed a Response to Defendant's supplemental memorandum on the issue of jurisdiction. The Court took this matter under advisement on March 13, 2018.

## DISCUSSION

In his supplemental memorandum Defendant asserts he brings his Motion to Reconsider pursuant to Federal Rule of Criminal Procedure 35(a). According to Defendant, therefore, this Court has jurisdiction to decide Defendant's Motion to Reconsider notwithstanding Defendant's appeal pursuant to Federal Rule of Appellate Procedure 4(b)(5), which provides in pertinent part:

> The filing of a notice of appeal under this Rule 4(b) does not divest a district court of jurisdiction to correct a sentence under Federal Rule of Criminal Procedure 35(a), nor does the filing of a motion under 35(a) affect the validity of a notice of appeal filed before entry of the order disposing of the motion.

**I.    Federal Rule of Criminal Procedure 35(a)**

Although "district courts generally have 'inherent authority' to decide motions for reconsideration and rehearing of orders in criminal proceedings, 18 U.S.C. § 3582 expressly limits the court's authority in sentencing." *United States v. Aguirre*, 214 F.3d 1122, 1124 (9th Cir. 2000)(citation omitted). Section 3582(c)(1) provides:

> The court may not modify a term of imprisonment once it has been imposed except that . . . (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure.

"Rule 35(c) provides the only plausible avenue by which the district court could properly correct or modify [an] original sentence." *United States v. JDT*, 762 F.3d 984, 1005 (9th Cir. 2014)(citing *United States v. Barragan-Mendoza*, 174 F.3d 1024

8 - OPINION AND ORDER

(9th Cir. 1999)). *See also United States v. Ceballos*, 671 F.3d 852, 854 (9th Cir. 2011)(quoting *United States v. Handa*, 122 F.3d 690, 691 (9th Cir. 1997)("'A district court does not have inherent power to resentence defendants at any time.  Its authority to do so must flow either from the court of appeals mandate . . . or from Federal Rule of Criminal Procedure 35.'").

Rule 35(a) of the Federal Rules of Criminal Procedure provides the Court "may correct a sentence that resulted from arithmetical, technical, or other clear error."

## II. Analysis

Defendant asserts the Court may correct his sentence pursuant to Rule 35(a) on the ground of clear error.  Specifically, Defendant contends the Court committed clear error when it denied him due process at the sentencing hearing by not requiring Officer Ring to answer defense counsel's question as to whether there was any evidence that Defendant "had face-to-face personal contact with Ms. Porter."  Defendant asserts "[i]t was apparent that Probation knew of other, and possibly more negative, allegations against the defendant."  Even though the Court disallowed defense counsel's question on the ground that it was not relevant because the allegation rested solely on telephone contact, Defendant asserts "[t]he mere perception that there was some additional and potentially harmful information against the defendant that Probation was allowed to keep hidden

cannot rationally be viewed as irrelevant to the outcome."

As noted, Rule 35(a) provides the Court with authority to correct a sentence "that resulted from arithmetical, technical, or other clear error." The Advisory Committee Notes to Rule 35(a), however, make clear

> [t]he authority to correct a sentence under this subdivision is intended to be *very narrow* and to extend only to those cases in which an obvious error or mistake has occurred in the sentence, that is, *errors which would almost certainly result in a remand* of the case to the trial court for further action under Rule 35(a). The subdivision is not intended to afford the court the opportunity to reconsider the application or interpretation of the sentencing guidelines or for the court simply to change its mind about the appropriateness of the sentence. Nor should it be used to reopen issues previously resolved at the sentencing hearing through the exercise of the court's discretion with regard to the application of the sentencing guidelines.

Emphasis added. "An error must be 'acknowledged and obvious' rather than 'arguable' in order to constitute clear error for purposes of Rule 35(a)." *United States v. Gilbert*, No. 16-17680, 2017 WL 6728518, at *3 (11th Cir. Dec. 29, 2017). Clear error, therefore, "does not exist [when] . . . reasonable people could disagree as to its resolution." *Id.* (citation omitted). *See also United States v. Lett*, 483 F.3d 782, 789 (11th Cir. 2007) (reversing the district court's grant of relief under Rule 35(a) on the ground that "[r]easonable arguments [could] be made on both sides" of the issue).

In addition, "a sentencing error only warrants relief under

10 - OPINION AND ORDER

Rule 35(a) if the error would 'almost certainly result in a remand of the case.'" *Gilbert*, 2017 WL 6728518, at *3 (quoting Fed. R. Crim. P. 35 Advisory Committee Notes (1991)). Thus, "Rule 35(a) does not apply if there is a reasonable argument that the sentence would be affirmed in spite of the error." *Gilbert*, 2017 WL 6728518, at *3. The history of Rule 35 supports this conclusion. Specifically, Rule 35 formerly gave district courts broad discretion to correct an "illegal sentence at any time" and a "sentence imposed in an illegal manner" within a specified time. *See* Fed. R. Crim. P. 35(a)(1986). The former version of Rule 35 was repealed in order to ensure more finality in sentencing. *See* Fed. R. Crim. P. 35 Advisory Committee Notes (1991)(noting the earlier version of Rule 35 was repealed to ensure the "finality of determinate sentencing"). "The current version of Rule 35 still provides 'an efficient and prompt method for correcting obvious technical errors' . . ., but it does not permit the court to reexamine its reasoning or to simply 'change its mind about the appropriateness of the sentence.'" *Gilbert*, 2017 WL 6728518, at *3 (quoting Fed. R. Crim. P. 35 Advisory Committee Notes (1991)). Moreover, even under the former version of Rule 35, which permitted district courts broader discretion to correct sentences, the Supreme Court held Rule 35 performed the "narrow function" of correcting an "illegal sentence" and was not meant to permit the "re-examin[ation of] errors occurring at the

trial or other proceedings prior to the imposition of sentence."
*Hill v. United States*, 368 U.S. 424, 430 (1962). *See also Heflin
v. United States*, 358 U.S. 415, 418 (1959)(holding the "only
question" on a Rule 35(a) motion is "whether the sentence imposed
was illegal on its face"). In *Hill* the Court explained a
sentence is not "illegal" pursuant to Rule 35 when "[t]he
punishment meted out was not in excess of that prescribed by the
relevant statutes, multiple terms were not imposed for the same
offense, nor were the terms of the sentence itself legally or
constitutionally invalid in any other respect." 368 U.S. at 430.
*See also United States v. Montalvo*, 581 F.3d 1147, 1153 (9th Cir.
2009)("Although Rule 35(a) is available to correct sentences that
are in violation of the Constitution, the constitutional
infirmity must be apparent in the terms of the sentence itself."
Quotations omitted).

Here Defendant does not assert an error in sentencing that
is "obvious." Instead Defendant asserts the Court made an
"arguable" error when the Court did not permit Officer Ring to
answer defense counsel's question about face-to-face contact.
This type of alleged error does not, however, constitute clear
error for purposes of Rule 35(a). As reflected in the record,
the Court sustained the government's objection on the basis that
the alleged violation of Defendant's probation rested on
unpermitted telephone contact and, in the exercise of its

discretion, the Court concluded whether Defendant had face-to-face contact with Porter was not relevant. Although reasonable jurists might disagree as to the resolution of this evidentiary issue, it does not constitute the type of obvious error the Court is authorized to correct pursuant to Rule 35. *See also United States v. Kane*,
No. 2:97-CR-61, 2014 WL 11310062, at *2 (S.D. Tex. Aug. 8, 2014) (The defendant's "current complaint that the Court failed to properly recognize [the defendant's] due process concerns during his revocation proceeding is a substantive issue, not [a] . . . clear error and does not fit within the parameters of Rule 35(a).").

The Court, therefore, concludes Defendant has not established this Court has jurisdiction to correct the alleged error pursuant to Rule 35(a). As a result, the Court also concludes Federal Rule of Appellate Procedure 4(b)(5) does not apply to prevent the divestiture of this Court's jurisdiction over this matter because Defendant has filed a notice of appeal.

Accordingly, the Court denies Defendant's Motion to Reconsider on the ground that this Court lacks jurisdiction to decide Defendant's Motion, and, in turn, the Court also denies Defendant's Motion for Discovery because it rests on the Court's jurisdiction to reconsider Defendant's sentence pursuant to Rule 35 or to take further action in this matter pending appeal.

## CONCLUSION

For these reasons, the Court **DENIES** Defendant's Motion (#72-1) to Reconsider Sentence or in the Alternative Reopen Sentencing Hearing and **DENIES** Defendant's Motion (#72-2) for Discovery.

IT IS SO ORDERED.

DATED this 27th day of March, 2018.

_____
ANNA J. BROWN
United States Senior District Judge